We'll hear the next case, United States v. Eberhardt. Good morning, Your Honors. Good morning. Please, the Court. My name is Peter Langrock, and I represent Mr. Eberhardt. Mr. Eberhardt was convicted of possessing child pornography in various counts and is now incarcerated on a 10-year sentence. The entire counts involve the question of things that were on a computer, and he disputed it was—whether or not it was a computer. The one question raised here was the conduct of the government in the closing argument, and was it sufficient to thwart the fair trial. It was such an unusual transcript to read. There were eight sustained objections in the course of the closing argument. I think that's probably more than I've seen in my entire career in trying cases. The question—the Perez case is really the lead case in terms of what we have to prove to get a reversal. That breaks down into two matters. One is the improper activities and whether there was substantial prejudice. Why don't we first focus on how severe or egregious they were in and of themselves. So there were three categories, basically, vouching. There were three that were vouching, right? Yep. Three that were inflammatory, and two that were misstatements of the record. Yep. Right? Some of which were objected to, and some weren't. But let's put that aside. On the vouching, the most egregious examples of vouching would be if the prosecutor is implying that he or she has evidence that the jury doesn't know. Like, the first statement was, we brought—I brought you the right defendant in a case that involved whether or not it was his computer or not, right? Yep. So the prosecutor wasn't implying—he immediately went into all the proof of why it was the right defendant. So that wasn't—in terms of vouching, it wasn't suggesting he knew something the jury didn't know, that they should rely on him. And he also—there were none of those three instances that involved him saying, you should believe this witness, or I found this witness believable. So it wasn't vouching for a particular witness. It was more—it was not appropriate, but the question is how egregious was the vouching. In full candor, if that were just the—the vouching were the only question here, I would have a lot harder road to hoe. All right. Let's focus on the—what I think you— The biggest focus I have, it deals with trying to prove that this was a bad person, an unworthy person. And he did this—let me just point out the—I've never seen in the record before where somebody did a stare and the court reporter said, indicating. He turned and he looked at the defendant, and talking to the jury, he said, bringing the jury in, this could be your children, basically. He was— He didn't say that. He didn't say that. Well, the implication is there. I mean, why would he raise the question—the correct quote is in the brief. And he looked and he stared and basically said, you know, I'm talking about this man could go by and it could be your 10-year-old out in the yard that he's staring at and look— There was something in the trial that dealt with your client as he was driving past a yard with a red-haired boy in it, making reference to the red-haired boy. So it wasn't completely out of the blue. It was a reference to something that was in the case, which was the proclivity of your client with respect to red-haired boys, right? If he had talked about what had happened and if it was relevant, that would be different, but he didn't. He talked about and he brought directly in, this was your child, your child to a new field. Besides that, the — Wait a minute. Say, how would you feel if this was your child? Where did he say that? I don't remember that. I read the whole summation. Let me bring that back to you, Your Honor. On rebuttal, you can point it out to us? Yes. On rebuttal. What about — I mean, the third prong is certainty of conviction. Wasn't the evidence here pretty overwhelming? Well — I mean, the question was whether the laptop belonged to him, right? I think I — the way I respond to that, Your Honor, is I read the closing of this matter, and I may be easy, but I would not have convicted on it. That's my basic — But let me — if this is deliberate — The factual question was whether this was his laptop, right? That was the factual question. Yeah. And the evidence — there were three witnesses who said it was his. The registered owner was Chris E. He had logged in 608 times. There was a fragment of data on it saying, my name is Chris Eberhardt. Wasn't the evidence that he owned it overwhelming? I don't think so, Your Honor. There was ample evidence that it was not his computer. What was that? And let me — the test that I would put to it is, if this was — and I think it was the three major things, the staring, referring to him as his mother's mommy — Oh, but we're talking about certainty of conviction. Yeah, but I — What evidence is there that the laptop was not his? The reason I say that, Your Honor, is the proof is that they would not have used this. This is improper conduct if they didn't need it. And is there a better judge than the prosecutor to say, I need this material, and that's why I'm using improper material? I mean, I see my — the time is — You have another minute and a half. The question is, at what point does — is the State reined in from improper conduct? I mean, I've been here before on a Perez case, and I know how difficult it is for the defendant, but at some point, some point, improper conduct by the prosecution must bear some sort of sanction. Now, we're not talking about letting somebody go free. We're talking about the fact of giving this person another trial. If there was certainty of conviction, why should we retry — have them retry a case with a certainty of conviction, even if there was — If there was a certainty of conviction, why did they use this? It could be inexperience. It could be emotions at the moment. There's a lot of reasons other than thinking they have a weak case. One of the other things is your client admitted to the officers that he used the computer for child pornography, didn't he? And on February 13th of 2015, he admitted he used the computer and that the e-mail address, SunPan57, which had all of this material on it, was his, right? So — All I can say, Your Honor, is in reading Pilarno's closing, every one of these matters is an alternative theory. It used to be, when I started practice, you had to exclude all reasonable hypotheses. That's not the situation. There are lots of reasonable hypotheses in this case. This is a circumstantial evidence case. There's not a single direct piece of evidence that ties into the computer. There is competing evidence. There's people who say that is not the computer that he owned. And now, there's also — The hypothesis would have to include that the officers lied about the confession, right? The confession was potentially interpreted of which computer we're talking about. There's no question he owned a computer. There's no question it was a gift to him. The question is, was it that computer? Now, if we are going to say we are the judges of the facts based upon what we see in the record, that's a different situation. But it seems to me that we should give the jury the chance to make that determination free of this type of prejudicial situation. And it just seems to me to allow the taint of this type of activity to go forward and say, but it's okay because he probably is going to be convicted. And I'm not sure that that probability is anywhere near — as I think I said in my brief, I don't consider it a slam dunk by any means. All right. Thank you. You've saved three minutes for rebuttal. And so you'll check for the site, for the statement. How would you feel if this were your child? Thank you. We'll hear from the government. Your Honors, Monica Richards on behalf of the United States of America. I could refer the court to the government appendix at page 599 with regard to that exchange, with regard to somebody driving by and being in the yard. It was on page — its 599 transcript was also page 599 of the government appendix. But in the same moment, the prosecutor also said, it's the same guy that when you're driving down the road and he sees. So he uses that word, you're — it's not a good way to do it. I grant that. But he uses you're — whether you're in the car or he uses you're — whether you're on the lawn. He should have — you know, I could tell the court, perhaps the use one. Imagine one is driving down the road. Imagine one is playing baseball instead of making it the direct — is that a direct preposition? You're. Bottom line is there was no need to phrase it that way. He could have simply just referred to the evidence with regard to that car ride rather than putting it — putting them in the scene, right? I see that point, Your Honor, absolutely. And like I suggested, it would have been a better use to say the word, imagine one is driving down the road. Imagine one is on the front yard. But that is what happened here, as Your Honor pointed out, that this was a case where we did have the defendant driving down the road and was struck by the vision of a red-haired child. And that was something that went to the mens rea. And what was involved in this case was a denial of ownership, a denial of response — taking responsibility for the deeds. And one of the things that was relevant to that determination was the repeated interest in red-headed children. So this isn't so out of the — this is relevant. The information was relevant in terms of the closing argument. It was a piece of evidence that was relevant to the court — to the jury's determination. So in terms of this court's review being for abuse of discretion, this court also has to be mindful of the fact that the district court had the particular advantage of observing the conduct and its effect on the jury. And here the court had that opportunity. The court made its rulings, sustained objections. There were eight sustained objections during the government submission? Yes. That is a lot, isn't it? Yes, it wasn't — it was. There were — there was — and there were instructions provided. There were curative measures taken. There was direct — there were instances where — of conduct that are raised now where there was no objection. So to the extent that we did have somebody who was in the heat of the moment, who was a vigorous advocate for the government, that's not something that's improper in closing. Summations are not a detached exposition, as would be appropriate, say, in a lecture. But this was a quick, intense trial. This was a five-day trial that involved heinous activity, heinous videos and pictures that were produced. And what the jury saw, frankly, was worse than what the prosecutor said. What the jury saw in this case was an accumulation of child pornography that was something unlike what has been seen in other cases, that this was a tremendous amount of child pornography. And the denial of ownership, the denial of responsibility for it, was directly what the prosecutor's job was in terms of closing argument, was to address that point. He knew that when the — when the defendant's attorney stood up, he was going to say, you got the wrong guy. So he said, you know what? We've got the right guy. He then backed it up with the evidence, and he outlined the evidence that supported that. So whether or not this is something in the comments, whether or not there were objections, whether or not there were comments made that somebody else might have handled differently, we can't say in the end that this is something that so infected the trial with unfairness as to making the resulting conviction a denial of due process. If there's any other questions, I'd rest on my brief. Thank you. Thank you. We'll hear the rebuttal. The quote was, imagine what that was like in that front yard. You're playing baseball with your 10-year-old, and some guy, long blonde hair and a must-draft buys and does this. I mean, that's just what happened. If you'd couple that with the fact that he talked — referred to his mother as mommy, he's a mommy's boy. If he referred to something with — he talks about being six years apart between Gebhardt and himself, and — but he doesn't deal with nothing in that relevancy. But he takes it back to when they were 15 and 9, which indicates that he had something wrong with him playing with little boys. This is all geared and definitely set up. It can't be just unintentional. There's this — eight times, he didn't — when he got warned by the judge, he came back, he came back, he came back. Eight times. And he did this deliberately because he — child pornography are bad guys. If I can show, he's a mommy's boy. He had a friend, and he — related to the juror. It's not an atmosphere that we, as a court system, should encourage. I thank you. Thank you. We will reserve decision.